IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| JAMES COTTON, | ) | 4:18CV3138 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MEMORANDUM |
| v. | ) | AND ORDER |
| | ) | |
| DOUGLAS COUNTY, NEBRASKA; DOUGLAS COUNTY CORRECTION CENTER; CORRECTIONS OFFICER STEVENS, Mr.; and CORRECTIONS OFFICER ESTEVEZ, Mr., | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff, James Cotton, currently an inmate at the Tecumseh State Correctional Center, filed his pro se Complaint (Filing 1) on October 4, 2018. Plaintiff was granted leave to proceed in forma pauperis on October 9, 2018 (Filing 6), and paid an initial partial filing fee on November 2, 2018. The court now conducts an initial review of Plaintiff's Complaint to determine whether summary dismissal is appropriate under 28 U.S.C. §§ 1915(e)(2) and 1915A.

I. SUMMARY OF COMPLAINT

Plaintiff alleges that on October 24, 2016, while being held at the Douglas County Correction Center ("DCCC"), he became involved in an altercation with a cellmate in the max-1 protective custody unit, as a result of which a female corrections officer handcuffed Plaintiff and seated him in a chair. Several minutes later, two male corrections officers, Defendants Stevens and Estevez, "came into the unit and began talking loudly to Plaintiff as they yanked him out of his chair." (Filing 1, p. 8). "Plaintiff advised both [men] that due to his disability that he needed his medically issued wheelchair." (Filing 1, pp. 8-9). They "ignore[d] plaintiff and stated 'well your

[*sic*] walking today Motherfucker.' Both the female c.o. and unit c.o. (names unknown) also advised defendants Stevens and Estevez that Plaintiff needed a wheelchair for transport. [T]he defendants abusively grabbed plaintiff and began running with Plaintiff leaving the max-1 unit into the hallway. Stevens was verbally abusing plaintiff and Estevez advised plaintiff, 'since you like suing people, you can sue us too'. Plaintiff's legs gave out from underneath him. The defendants then slammed Plaintiff head first into the concrete floor knocking him unconscious.... Plaintiff was taken to the infirmary, where they glued his eyebrow shut to stop the bleeding, ...." (Filing 1, p. 9). Plaintiff alleges he "sustained a concussion, black eyes, head trauma (severe) swollen rib Intercostal torn and severe bruising." (Filing 1, p. 8).

Four claims are alleged by Plaintiff: (1) an Eighth Amendment excessive force claim against Stevens and Estevez, in their individual capacities ("Count Four"); (2) an Eighth Amendment claim against Douglas County for failing to train and supervise Stevens and Estevez ("Count One"); (3) an Americans with Disabilities Act ("ADA") claim against DCCC based on the refusal of Stevens and Estevez to transport Plaintiff in a wheelchair ("Count Two"); and (4) a Rehabilitation Act claim against DCCC, also based on such refusal by the officers ("Count Three"). (Filing 1, pp. 5-7).

## II.  LEGAL STANDARDS ON INITIAL REVIEW

The court is required to review prisoner and in forma pauperis complaints seeking relief against a governmental entity or an officer or employee of a governmental entity to determine whether summary dismissal is appropriate. *See* 28 U.S.C. §§ 1915(e) and 1915A.  The court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2)(B).

Pro se plaintiffs must set forth enough factual allegations to "nudge[] their claims across the line from conceivable to plausible," or "their complaint must be

dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). However, "[a] pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Id.*, at 849 (quotation marks and citations omitted).

### III. DISCUSSION OF CLAIMS

*A. Excessive Force Claims*

Although Plaintiff claims Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment, the allegations of the Complaint do not reveal whether Plaintiff was a pretrial detainee or a convicted prisoner at the time of the alleged incident. The Eighth Amendment "has no application" until there has been a "formal adjudication of guilt." *Walton v. Dawson*, 752 F.3d 1109, 1117 (8th Cir. 2014) (quoting *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983)). But the Fourteenth Amendment gives state pretrial detainees rights which are "*at least as great* as the Eighth Amendment protections available to a convicted prisoner." *Id.* (emphasis in original; quoting *City of Revere*, 463 U.S. at 244). The Constitution affords greater protection to a pretrial detainee compared to a convicted inmate in the sense that "[d]ue process requires that a pretrial detainee not be punished." *Id.* (quoting *Bell v. Wolfish*, 441 U.S. 520, 535 n. 16 (1979)).

Excessive force claims of pretrial detainees are analyzed under an objective reasonableness standard. *Ryan v. Armstrong*, 850 F.3d 419, 427 (8th Cir. 2017). A court must assess the actions of each officer "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Id.* (quoting *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015)). A court must also account for the "legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained," appropriately deferring to "policies and practices that in th[e] judgment" of jail officials "are needed to preserve internal order and discipline and to maintain institutional security." *Id.* (quoting *Bell*, 441 U.S. at 520). Factors relevant to assessing the objective reasonableness of force used by officers include:

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Id.* (quoting *Kingsley*, 135 S.Ct. at 2473).

"After incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Jackson v. Gutzmer*, 866 F.3d 969, 974 (8th Cir. 2017) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). "[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishment Clause, the core judicial inquiry is that set out in *Whitley*: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* (quoting *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992)). This inquiry turns on "such factors as the need for the application of force, the relationship between the need and the amount of force that was used, and the extent of injury inflicted," from which "inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the

unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Id.* (quoting *Whitley*, 475 U.S. at 321). The word "sadistically" is not surplusage; "'maliciously' and 'sadistically' have different meanings, and the two together establish a higher level of intent than would either alone." *Id.* (quoting *Howard v. Barnett*, 21 F.3d 868, 872 (8th Cir. 1994)). "One acts 'maliciously' by undertaking, without just cause or reason, a course of action intended to injure another; in contrast, one acts 'sadistically' by engaging in extreme or excessive cruelty or by delighting in cruelty." *United States v. Miller*, 477 F.3d 644, 647 (8th Cir. 2007) (quoting *Howard v. Barnett*, 21 F.3d 868, 872 (8th Cir.1994)).

*1. Defendants Stevens and Estevez*

In Count Four of his Complaint,[1] Plaintiff alleges:

> Defendants Stevens and Estevez ignored plaintiff's request to be provided a "wheelchair", for transport, due to his disability on October 24, 2016, when escorting plaintiff out of protective custody unit max-1 at the DCCC. Instead the defendants used excessive [force] against Plaintiff that was unnecessary, maliciously and sadistically [applied] for the very purpose of causing Plaintiff bodily injury.

(Filing 1, p. 7).

Elsewhere in the Complaint, Plaintiff alleges that Stevens and Estevez came into the max-1 unit after Plaintiff was already handcuffed and seated in a chair, were verbally abusive, "yanked" Plaintiff out of the chair, "abusively grabbed' Plaintiff and began running with him into the hallway even though they were told he needed a wheelchair for transport, and, when Plaintiff faltered, "slammed" him headfirst into

---

[1] Count Four is captioned: "Defendants Stevens and Estevezs' use of excessive force against Plaintiff while acting under color of state law was applied malicicously and sadistically with deliberate indifference in violation of Eighth Amendment right." (Filing 1, p. 7) (spelling and punctuation as in original).

the concrete floor, rendering Plaintiff unconscious and causing other physical injuries. The allegations also indicate the officers were motivated to injure Plaintiff because he "like[s] suing people." (Filing 1, pp. 8-9). These allegations of fact are sufficient to state a plausible claim against Stevens and Estevez for the use of excessive force, whether judged by the standards of the Eighth Amendment (applicable to convicted prisoners) or the Fourteenth Amendment (applicable to pretrial detainees).

*2. Defendant Douglas County*

Plaintiff alleges in Count One of his Complaint[2] that:

> Defendant Douglas County, Nebraska is the "moving force" behind it's failure to train and supervise all subortinates and named defendants herein to follow clearly established law, rules and regulations that directed Defendants C.O. Stevens and C.O. Estevez not to use excessive force where the defendants maliciously and sadistically apllied on Plaintiff for him merely requesting that he be provided a medical issued wheelchair for transport.
>
> The unnecessary and wanton infliction of pain amounted to deliberate indifference towards Plaintiff which is an Eighth Amendment violation from the right to be free from cruel and unusual punishment. Defendant Douglas County, Nebraska's failure to train and supervise caused plaintiff damages.

(Filing 1, p. 5) (spelling and punctuation as in original).

"Section 1983 liability for a constitutional violation may attach to a municipality [or county] if the violation resulted from (1) an 'official municipal

---

[2] Count One is captioned: "Monell claim where Defendant Douglas County, Nebraska was the moving force for constitutional violations and federal law by it's failure to train and supervise all subortinates and named dedfendants herein." (Filing 1, p. 5) (spelling and punctuation as in original).

policy,' (2) an unofficial 'custom,' or (3) a deliberately indifferent failure to train or supervise." *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018) (quoting *Corwin v. City of Independence*, 829 F.3d 695, 699 (8th Cir. 2016)); *see also Brossart v. Janke*, 859 F.3d 616, 627-28 (8th Cir. 2017) ("A municipality may also be liable where its policies are lawful on their face but municipal action, such as failure to train or supervise, was taken with deliberate indifference as to its known or obvious consequences and led an employee to violate a plaintiff's rights.") (quotation marks and citations omitted), *cert. denied*, 138 S. Ct. 2025 (2018). As further explained by the Court of Appeals in *S.M. v. Lincoln Cty.*, 874 F.3d 581, 585 (8th Cir. 2017):

> A municipality (or County) "may not be found liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Szabla v. City of Brooklyn Park, MN.*, 486 F.3d 385, 389 (8th Cir. 2007) (en banc), quoting *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).... [W]here the claim is that municipal action lawful on its face caused an employee to inflict constitutional injury, "rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." *Id.* at 405, 117 S.Ct. 1382. In *City of Canton v. Harris*, 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989), the Court held that municipal liability for a claim such as failure to supervise [an] employee ... requires proof that the failure "amounts to deliberate indifference to the rights of persons with whom the [employee] come[s] into contact." Municipal inaction must be the "moving force [behind] the constitutional violation." *Id.* at 389, 109 S.Ct. 1197 (alteration in original) (quotation omitted); *see Szabla*, 486 F.3d at 390-91.

> Deliberate indifference in this context "is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." [*Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 410 (1997)]. The issue is whether, "in light of the duties assigned to specific officers or employees the need for more or different training [or supervision] is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to

the need." *Canton*, 489 U.S. at 390, 109 S.Ct. 1197, quoted in *Liebe v. Norton*, 157 F.3d 574, 579 (8th Cir. 1998); *cf. Cash v. Cty. of Erie*, 654 F.3d 324, 337 (2d Cir. 2011) (failure-to-supervise claim), *cert. denied*, 565 U.S. 1259, 132 S.Ct. 1741, 182 L.Ed.2d 528 (2012). "A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62, 131 S.Ct. 1350, 179 L.Ed.2d 417 (2011) (quotation omitted). "In resolving the issue of a city's liability, the focus must be on adequacy of the [supervision] in relation to the tasks the particular officers must perform." *Canton*, 489 U.S. at 390, 109 S.Ct. 1197.

To state a viable § 1983 claim for "failure to train" against Douglas County, Plaintiff must "plead facts sufficient to show that (1) [the] County's officer-training practices were inadequate; (2) [the] County was deliberately indifferent to the rights of others in adopting these training practices, and [the] County's failure to train was a result of deliberate and conscious choices it made; and (3) [the] County's alleged training deficiencies caused [Plaintiff's] constitutional deprivation." *Ulrich v. Pope Cty.*, 715 F.3d 1054, 1061 (8th Cir. 2013). "[A] claim for failure to supervise requires the same analysis as a claim for failure to train." *Atkinson v. City of Mountain View*, 709 F.3d 1201, 1216 (8th Cir. 2013) (quoting *Robinette v. Jones*, 476 F.3d 585, 591 (8th Cir. 2007)).

While Plaintiff alleges generally that Douglas County's failure to train and supervise Stevens and Estevez caused his Eighth Amendment rights to be violated, these allegations are mere legal conclusions, unsupported by any facts from which it might reasonably be inferred that the officers' alleged misconduct resulted from an unconstitutional policy, custom, or practice. Count One of Plaintiff's Complaint therefore fails to state a claim upon which relief may be granted against Douglas County under § 1983, and it will be dismissed without prejudice. *See Ulrich*, 715 F.3d at 1061 (affirming Rule 12(b)(6) dismissal, stating: "Even assuming arguendo that Ulrich suffered a constitutional deprivation, we agree with the district court that Ulrich alleged no facts in his complaint that would demonstrate the existence of a policy or

custom by Pope County that caused such deprivation. Ulrich labels Pope County's supervision and training practices as 'inadequate' but points to no facts to support this assertion other than the example of his own arrest and detention. Generally, an isolated incident of alleged police misconduct, such as Ulrich alleges occurred here, cannot, as a matter of law, establish a municipal policy or custom creating liability under § 1983. Ulrich further fails to provide facts in his complaint to support his assertion that Pope County adopted deficient supervision and training practices with deliberate indifference to the constitutional rights of others, and that these training practices were the product of the County's deliberate and conscious choices.") (citation omitted); *Rinne v. City of Beatrice*, No. 4:18CV3037, 2018 WL 4492227, at *7 (D. Neb. Sept. 19, 2018) (granting Rule 12(b)(6) motion to dismiss, stating: "Plaintiff's Complaint simply regurgitates the elements of a failure-to-train claim without providing a plausible factual basis for concluding that the City of Beatrice's police-officer training was inadequate; that there was a pattern of similar constitutional violations by improperly trained City police officers; and that the City had prior actual or constructive notice of such a pattern, of the inadequacy of its training procedures, and that its training procedures were likely to result in constitutional violations. Perhaps most significant is Plaintiff's complete failure to allege any facts supporting his failure-to-train theory other than his own arrest and detention."); *Infante v. City of Hastings, Nebraska*, No. 8:17CV3163, 2018 WL 1732155, at *4 (D. Neb. Apr. 9, 2018) (granting Rule 12(b)(6) motion to dismiss, stating: "Infante makes the conclusory allegation that her constitutional rights were violated as a result of an official policy, unofficial custom, and improper training and supervision, but she failed to allege any facts in support of that conclusion. She did not identify any of the individual defendants as having any supervisory authority or training responsibilities, and she did not allege the existence of any causal policy or custom employed by the City of Hastings, specifically.").

*B. ADA/Rehabilitation Act Claims*

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Section 504 of the Rehabilitation Act similarly provides that "[n]o otherwise qualified individual with a disability ... shall ... be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). The enforcement, remedies, and rights are the same under both Title II of the ADA and § 504, although the Rehabilitation Act contains the additional requirement that the plaintiff show the program or activity from which he is excluded receives federal financial assistance. *See Gorman v. Bartch*, 152 F.3d 907, 911 (8th Cir. 1998). Given the similarities between the ADA and § 504, "cases interpreting either are applicable and interchangeable." *Id.*, at 912.

Under the ADA, there are two means of discrimination: (1) disparate treatment and (2) the failure to make reasonable accommodations. *Peebles v. Potter*, 354 F.3d 761, 765 (8th Cir. 2004). Disparate treatment discrimination is based on "intent or actual motive," whereas in the second type of claim, "the 'discrimination' is framed in terms of the failure to fulfill an affirmative duty—the failure to reasonably accommodate the disabled individual's limitations." *Id.* at 767.

Here, Plaintiff claims DCCC failed to make a reasonable accommodation for his disability when he was escorted out of the max-1 unit without a wheelchair. It is alleged in Count Two of the Complaint[3] that:

---

[3] Count Two is captioned: "Discrimination based on disability pursuant to Title II of the A.D.A. against Defendant Douglas County Correction Center 'DCCC'." (Filing 1, p. 5).

-10-

> Plaintiff is a qualified individual with a disability on record with the Social Security Administration, Omaha, Neb.; since 2008. As defined in 42 U.S.C. Section 12131(2). Because of nerve damage to his feet, full hip replacement, right knee out (bone on Bone), unstable lumbar spine (four major surgeries), full thickness tendon shoulder tears, degennarative disc and vertabrae disesae of the spine from 4 major back surgeries, and other physical impairments, it substantially limits his major life activities.
>
> Plaintiff was otherwise qualified to receive benefits and participate in Defendant DCCC's services, programs, and activities.
>
> The A.D.A. and its implementing regulations require that alternative services be made available to meet the needs of qualified individuals with disabilities, such as plaintiff. The DCCC and the Defendants, Stevens and Estevez denied Plaintiff access to a wheelchair and other accomodations, thereby discriminating against him because of his disabilities.
>
> This A.D.A. violation by the defendant DCCC and defendants Stevens and Estevez caused Plaintiff damages.

(Filing 1, pp. 5-6) (spelling an punctuation as in original). It is further alleged in Count Three of the Complaint[4] that:

> Plaintiff is disabled/handicapped as defined in 29 U.S.C. Section 705. Plaintiff is or was otherwise qualified to receive the benefits and to participate in defendant DCCC's services, programs, and activities.
>
> Defendant DCCC was responsible for Defendant's Stevens and Estevezs' refusal to provide Plaintiff an accomodation, "wheelchair" when they knew Plaintiff was medically prescribed it and where it was

---

[4] Count Three is captioned: "Discrimination based on disability pursuant to Section 504 Rehabiliation Act of 1973, 29 U.S.C. 794(a)(2006) against Defendant, Douglas County Corrections Center's failure to accomodate 'wheelchair'." (Filing 1, p. 6) (spelling and punctuation as in original).

>   medically necessary to transport Plaintiff. Plaintiff was discriminated against and is a violation of the Rehabiliation Act, of 1973 Section 504, which caused Plaintiff damages.

(Filing 1, p. 6) (spelling and punctuation as in original).

Counts Two and Three are identified by Plaintiff as claims that are brought against the Douglas County Correction Center, but DCCC cannot be sued. *See Dan v. Douglas Cty. Dep't of Corr.* No. 8:06CV714, 2009 WL 483837, at *4 (D. Neb. Feb. 25, 2009) ("[T]he Department of Corrections and other units within the DCCC and Douglas County lack the legal capacity to sue or be sued in their own names"); *see also Owens v. Scott Cty. Jail*, 328 F.3d 1026, 1027 (8th Cir. 2003) ("[C]ounty jails are not legal entities amenable to suit."). These claims therefore will be treated as being brought against Douglas County rather than DCCC.

Also, to the extent Plaintiff may be seeking to recover damages from Stevens and Estevez in Counts Two and Three, no viable claim is stated against them. This is because corrections officers cannot be sued in their individual capacities under the ADA or the Rehabilitation Act. *See Dinkins v. Corr. Med. Servs.*, 743 F.3d 633, 634 (8th Cir. 2014) (per curiam). Plaintiff does not purport to sue the officers in their official capacities, nor should he do so when Douglas County is a named Defendant. *See King v. City of Crestwood*, 899 F.3d 643, 650 (8th Cir. 2018) (because "[a] suit against a government officer in his official capacity is functionally equivalent to a suit against the employing governmental entity, a suit against a government official in only his official capacity should be dismissed as redundant if the employing entity is also named.") (quotation marks and citation omitted).

In order to sufficiently plead that Douglas County violated Title II or § 504, Plaintiff must allege "(1) that he is a qualified individual with a disability; (2) that he was excluded from participation in or denied the benefits of the jail's services, programs, or activities, or was otherwise subjected to discrimination by the jail; and

(3) that such exclusion, denial of benefits, or other discrimination was by reason of his disability." *Baribeau v. City of Minneapolis*, 596 F.3d 465, 484 (8th Cir. 2010); *see Layton v. Elder*, 143 F.3d 469, 472 (8th Cir. 1998).

Plaintiff has sufficiently alleged that he is a qualified individual with a disability, and that he requires a wheelchair for mobility. The "deliberate refusal of prison officials to accommodate [an inmate's] disability-related needs in such fundamentals as mobility" may constitute a violation of Title II. *United States v. Georgia*, 546 U.S. 151, 157 (2006). But in order to state a claim upon which relief may be granted, Plaintiff must also identify a service, program, or activity at DCCC that he was excluded from participation in or denied the benefits of. *See Brown v. Nebraska Dep't of Corr. Servs.*, No. 8:16CV217, 2016 WL 5173232, at *6 (D. Neb. Sept. 21, 2016) ("[T]o properly state a failure-to-accommodate claim under Title II of the ADA, Plaintiff must allege that the defendants' failure to accommodate his alleged disability has prevented him from participating in specific programs and activities at his correctional institution. For example, Plaintiff must specify the inadequate accommodations that are the basis for his claim (such as failure to assign him to a permanent cell that is located on the main floor so as not to require him to climb stairs and that has grab bars by the toilet and a lower bunk). Plaintiff must also specifically identify the activities, services, and programs in which he cannot participate due to the defendants' failure to accommodate Plaintiff's disability."). In *Baribeau*, for example, the plaintiff's prosthetic leg was confiscated when he was booked into jail, but because the plaintiff could not show that he was denied access to any of the benefits of the jail's services, programs, or activities during his less than 48 hours in custody, his Title II claim failed as a matter of law. *See* 596 F.3d at 485.

In the present case, Plaintiff points to only one occasion when he was not permitted to use a wheelchair at DCCC, and on that occasion officers were forcibly removing him from his housing unit. Even so, Plaintiff may be able to establish the second element of a prima facie case of disability discrimination. *See Gorman*, 152 F.3d at 912-13 (paraplegic arrestee who was injured while being transported in police

van that was not equipped for him to remain seated in wheelchair alleged actionable claim under ADA and Rehabilitation Act; arrestee transportation was "program" or "service" of police department and "benefit" plaintiff sought was "to be handled and transported in a safe and appropriate manner consistent with his disability"). "Covered programs or services do not need to be voluntary, for 'the words [of the statute] do not connote voluntariness.'" *Id.* at 912 (quoting *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 211 (1998)). "The statutes must be interpreted broadly to include the ordinary operations of a public entity in order to carry out the purpose of prohibiting discrimination." *Id* at 913.

To recover compensatory damages, Plaintiff must prove discriminatory intent, which can be shown by deliberate indifference to Plaintiff's rights under the ADA and Rehabilitation Act—specifically, Defendant's "deliberate indifference to the strong likelihood that pursuit of its questioned policies will likely result in a violation of federally protected rights." *Meagley v. City of Little Rock*, 639 F.3d 384, 389 (8th Cir. 2011) (quotation marks and citation omitted); *see Brown v. Houston*, No. 8:16CV217, 2018 WL 1309833, at *7 (D. Neb. Mar. 13, 2018). Plaintiff does not allege that Douglas County was deliberately indifferent to his rights or otherwise intentionally discriminated against him. He instead alleges that the county "was responsible for [the officers'] refusal to provide Plaintiff [a wheelchair] when [the officers] knew ... it was medically necessary to transport Plaintiff." (Filing 1, p. 6).

The Supreme Court has declined to decide whether a public entity subject to Title II of the ADA "can be held vicariously liable for money damages for the purposeful or deliberately indifferent conduct of its employees." *City & Cty. of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1773-74 (2015). The Eighth Circuit also has not addressed this issue. Because this is an open question, the court will assume for purposes of initial review that Douglas County may be held liable under the ADA and Rehabilitation Act based on the facts that are alleged in the Complaint, and will allow Counts Two and Three to proceed to service of process on Douglas County. *See, e.g. Duvall v. Cty. of Kitsap*, 260 F.3d 1124, 1141 (9th Cir. 2001) ("When a plaintiff

brings a direct suit under either the Rehabilitation Act or Title II of the ADA against a municipality (including a county), the public entity is liable for the vicarious acts of its employees."); *Delano-Pyle v. Victoria Cnty.*, 302 F.3d 567, 574-75 (5th Cir.2002) (holding that a claim against a municipality under the ADA and Rehabilitation Act does not require proof that the employee who committed the alleged act is a policymaker or that there is a policy of discrimination).

## IV. CONCLUSION

Plaintiff has stated a plausible excessive force claim against Stevens and Estevez in their individual capacities (Count Four of the Complaint), but allegations regarding Douglas County's failure to train and supervise the officers (Count One of the Complaint) fail to state a claim upon which relief may be granted. Plaintiff has also stated plausible claims for relief against Douglas County for alleged ADA and Rehabilitation Act violations (Counts Two and Three of the Complaint), but he cannot sue DCCC, Stevens, or Estevez for such alleged violations.

IT IS THEREFORE ORDERED:

1. Count One of Plaintiff's Complaint is dismissed without prejudice.

2. Defendant Douglas County Correction Center is dismissed as a party to this action, and Counts Two and Three of the Complaint are treated as being alleged solely against Defendant Douglas County. To the extent Counts Two and Three of the Complaint include claims for damages against Defendants Stevens and Estevez, such claims are dismissed.

3. Plaintiff's excessive force claim against Defendants Stevens and Estevez (Count Four of the Complaint) may proceed to service of process. The clerk of court is directed to obtain the last known addresses for

Defendants Stevens and Estevez from the Marshals Service for service of process on them in their individual capacities.

4. Plaintiff's ADA claim (Count Two of the Complaint) and Rehabilitation Act claim (Count Three of the Complaint) may proceed to service of process on Defendant Douglas County, which may be served at the office of the Douglas County Clerk, 1819 Farnam Street, Room H-08, Omaha, NE 68183.

5. Upon obtaining the necessary addresses, the clerk of court is directed to complete and issue summonses for Defendants. The clerk of court is further directed to deliver the summonses, the necessary USM-285 Forms, copies of Plaintiff's Complaint (Filing 1), and copies of this Memorandum and Order to the Marshals Service for service of process on Defendants. Service may be accomplished by using any of the following methods: personal, residence, certified mail, or designated delivery service. *See* Federal Rule of Civil Procedure 4(e); Neb. Rev. Stat. § 25-508.01 (Reissue 2016).[5]

6. The clerk of court is directed to file under seal any document containing the last known addresses for Defendants Stevens and Estevez.

---

[5] Pro se litigants proceeding in forma pauperis are entitled to rely on service by the United States Marshals Service. *Wright v. First Student, Inc.*, 710 F.3d 782, 783 (8th Cir. 2013). Pursuant to 28 U.S.C. § 1915(d), in an in forma pauperis case, "[t]he officers of the court shall issue and serve all process, and perform all duties in such cases." *See Moore v. Jackson,* 123 F.3d 1082, 1085 (8th Cir. 1997) (language in § 1915(d) is compulsory). *See, e.g., Beyer v. Pulaski County Jail*, 589 Fed. Appx. 798 (8th Cir. 2014) (unpublished) (vacating district court order of dismissal for failure to prosecute and directing district court to order the Marshal to seek defendant's last-known contact information where plaintiff contended that the Jail would have information for defendant's whereabouts); *Graham v. Satkoski*, 51 F.3d 710, 713 (7th Cir. 1995) (when court instructs Marshal to serve papers for prisoner, prisoner need furnish no more than information necessary to identify defendant; Marshal should be able to ascertain defendant's current address).

7. The United States Marshal shall serve all process in this case without prepayment of fees from Plaintiff.

8. Federal Rule of Civil Procedure 4(m) requires service of the complaint on a defendant within 90 days of filing the complaint. However, Plaintiff is granted, on the court's own motion, an extension of time until 90 days from the date of this order to complete service of process.

9. The clerk of court is directed to set the following pro se case management deadline: February 20, 2019: check for completion of service of process.

DATED this 19th day of November, 2018.

> BY THE COURT:
>
> s/ *Richard G. Kopf*
> Senior United States District Judge